Granovsky & Sundaresh PLLC
Alexander Granovsky (AG-6962)
Benjamin Rudolph Delson (BD-1724)
48 Wall Street
New York, NY 10005
ag@g-s-law.com
delson@g-s-law.com
646-524-6001

Attorneys for Plaintiffs, Joseph Munoz, Matthew Mustakas,
Dominick Ruvolo and Tiffany Oumano-Williams

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH MUNOZ, MATTHEW MUSTAKAS, DOMINICK RUVOLO, and TIFFANY OUMANO-WILLIAMS, on behalf of themselves and all others persons similarly situated, | : : : : |
| | : Civil Action No.: CV 19-3824 (JS) (AKT) |
| Plaintiffs, | : : |
| v. | : **FIRST AMENDED COMPLAINT** : **and JURY DEMAND** |
| ACA CONTRACTING INC., DIANA AMOROSO, individually and MICHAEL AMOROSO, individually, | : : : : |
| Defendants. | : : |

Plaintiffs Joseph Munoz, Matthew Mustakas, Dominick Ruvolo and Tiffany Oumano-Williams on behalf of themselves and all others similarly situated, upon personal knowledge as to themselves and upon information and belief as to other matters, by their attorneys, GRANOVSKY & SUNDARESH PLLC, as and for their First Amended Complaint against Defendants ACA Contracting, Inc., Diana Amoroso, and Michael Amoroso, allege as follows:

## NATURE OF ACTION

1.      Plaintiffs, on behalf of themselves and all other similarly situated employees and former employees of Defendants, bring this lawsuit seeking recovery against Defendants for

Defendants' violation of the Fair Labor Standards Act, as amended (the "FLSA"), 29 U.S.C. § 201 et. seq. and allege that they and all others who elect to opt into this action pursuant to the collective action provision of, 29 U.S.C. § 216(b), are entitled to recover from Defendants: (1) unpaid wages for work performed for which they received no compensation at all; (2) unpaid wages for overtime work for which they did not receive overtime premium pay, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiffs, on their own behalf, bring this lawsuit seeking recovery against Defendant for Defendant's violation of the New York Labor Law, Art. 6, §§ 190 et. seq., and Art. 19, §§ 650 et. seq., and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142 (collectively, "NYLL"), and allege that they are entitled to recover from Defendant: (1) unpaid wages for work performed for which they received no compensation at all; (2) unpaid wages for overtime work for which they did not receive overtime premium pay; (3) statutory damages for Defendants' failure to provide accurate wage notices and wage statements pursuant to NYLL §§ 195(1) and (3); (4) liquidated damages; (5) statutory penalties; and (6) attorneys' fees and costs.

3.      Plaintiffs and others similarly situated have been/are employed by Defendants as foremen for Defendant ACA Contracting Inc., located Suffolk County, New York.

4.      As part of their regular business practice, Defendants intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA and NYLL with respect to Plaintiffs and others similarly situated.  This policy and pattern or practice includes but is not limited to:

               A.      willfully failing to pay Plaintiffs and others similarly situated, overtime wages for certain hours that they worked in excess of 40 hours per workweek; and

B.    willfully failing to accurately record all of the time Plaintiffs and others similarly situated have worked for the benefit of Defendants.

C.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §§ 1331, 1367, and 2201.

6.    This Court has subject matter jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims herein occurred in this District.

8.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

**Defendants**

9.    Defendant ACA Contracting Inc. ("ACA" or the "Company") is contractor with its office location at 333 Skidmore Road, Deer Park, NY 11729.

10.    ACA describes itself on its website as a "team of dedicated professionals performing our duty by heart with passion and commitment backed up by over four decades of experience in the relevant field. The materials we use have been chosen through our market experience spanning across years of practical working experience in this field so that our clients get only industry's best top of the notch products for whatever service they choose from us. As far as waterproofing is concerned the whole process from start to the end is accomplished under expert supervision to

3

enable hundred percent positive results in the watertight seal applied to your building. Our niche is our passion in the work we do as this business is our family owned since 2005 and we had an aim which we have achieved now of becoming the biggest installer of below-grade foundation waterproofing, air vapor barrier, caulking and roofing in commercial establishments."

11.     ACA asserts on its website that it is a Certified MWBE Woman-Owned Business Enterprise.

12.     Upon information and belief, at all times relevant to this Complaint, ACA, as part of its regular business operations, employed foremen to perform general labor, mechanical tasks, attend to the day-to-day needs of a given project site.

13.     Upon information and belief, at all times relevant to this Complaint, ACA's annual gross volume of sales made or business done was not less than approximately $500,000.00.

14.     At all times relevant to this Complaint, ACA was and is an "enterprise engaged in commerce" under the FLSA, 29 U.S.C. § 201 et. seq., was and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a) and the NYLL.

15.     Upon information and belief, at all relevant times, ACA has used goods produced in interstate commerce.

16.     Upon information and belief, ACA constitutes an "enterprise" as defined by the FLSA.

17.     ACA caused the violations set forth in this Complaint.

18.     Upon information and belief, Defendant DIANA AMOROSO owns and operates ACA. She has the power to hire, fire and control nearly every working condition of the employees at ACA, including Plaintiffs and all similarly situated employees.

19.     Upon information and belief, Defendant MICHAEL AMOROSO is married to Defendant DIANA AMOROSO, and is a part-owner of ACA.  MICHAEL AMOROSO has the full power to hire, fire and control nearly every working condition of the employees at ACA, including Plaintiffs and all similarly situated employees.

**Plaintiffs**

***Joseph Munoz***

20.     Plaintiff JOSEPH MUNOZ ("Munoz") is and was, at all relevant times an adult individual residing in Ronkonkoma, New York.

21.     At all relevant times, the work performed by Munoz and similarly situated employees was to the benefit of the business operated by Defendants.

22.     At all relevant times, Munoz and similarly situated employees worked in interstate commerce as to fall within the protections of the Act.

23.     A written consent form for Plaintiff JOSEPH MUNOZ is attached as **Exhibit A** to this Collective Action Complaint.

***Matthew Mustakas***

24.     Plaintiff MATTHEW MUSTAKAS ("Mustakas") is and was, at all relevant times an adult individual residing in West Babylon, New York.

25.     At all relevant times, the work performed by Mustakas and similarly situated employees was to the benefit of the business operated by Defendants.

26.     At all relevant times, Mustakas and similarly situated employees worked in interstate commerce as to fall within the protections of the Act.

27.     A written consent form for Plaintiff MATTHEW MUSTAKAS is attached as **Exhibit B** to this Collective Action Complaint.

***Dominick Ruvolo***

28.     Plaintiff DOMINICK RUVOLO ("Ruvolo") is and was, at all relevant times an adult individual residing in Lindenhurst, New York.

29.     At all relevant times, the work performed by Munoz and similarly situated employees was to the benefit of the business operated by Defendants.

30.     At all relevant times, Munoz and similarly situated employees worked in interstate commerce as to fall within the protections of the Act.

31.     A written consent form for Plaintiff DOMINICK RUVOLO is attached as **Exhibit C** to this Collective Action Complaint.

***Tiffany Oumano-Williams***

32.     Plaintiff TIFFANY OUMANO-WILLIAMS ("Williams") is and was, at all relevant times an adult individual residing in Islandia, New York.

33.     At all relevant times, the work performed by Williams and similarly situated employees was to the benefit of the business operated by Defendants.

34.     At all relevant times, Williams and similarly situated employees worked in interstate commerce as to fall within the protections of the Act.

35.     A written consent form for Plaintiff TIFFANY OUMANO-WILLIAMS is attached as **Exhibit D** to this Collective Action Complaint.

## STATEMENT OF FACTS

### *Facts Applicable to All Plaintiffs*

36.     Defendants operate a contracting company out of Deer Park, New York in Suffolk County.

37.     Defendants had construction contracts for clients throughout Long Island, New York City and the surrounding area.

38.     Plaintiffs worked for Defendants as foremen providing construction services on these contracts for Defendants' clients.

39.     Plaintiffs were paid for time spent physically on project sites, but were not paid for time spent offsite.

40.     As part of their responsibilities, Plaintiffs were required to use company vehicles. Plaintiffs were required to use these company vehicles to transport workers and supplies to and from Defendants' various work locations.

41.     Plaintiffs were required to pick up workers at a pre-assigned Park-and-Ride and a pre-set time every morning.  Similarly, Plaintiffs were also required to drop off these workers at the same pre-assigned Park-and-Ride every evening.

42.     In addition, Plaintiffs were required to pick up and drop off equipment and supplies at Defendant's facility in Long Island before and after their work at Defendants' work location.

43.     Plaintiffs were also required to maintain, gas-up and service the company vehicle.

44.     Plaintiffs were never paid for their time using company vehicles before and after their time on Defendants' work sites.

45.     As a result, each Plaintiff, and, upon information and belief all Collective Action Plaintiffs, were not compensated for several hours of work every week.

***Plaintiff Joseph Munoz***

46.     Munoz was hired by Defendants to work as a foreman for ACA.

47.     Munoz's start date was January 2013 and he continued working for the Defendants until approximately April 2019.

48.     Defendants never provided Munoz with any Employment Agreement or for that matter, any written record, documenting his salary and/or hourly rate of pay.

49.     Rather, Munoz's salary and rate of pay were verbally communicated to him by the Defendants.

50.     Munoz's duties consisted primarily of general labor, mechanical tasks, and attending to the day-to-day needs of a given project site.

51.     When hired, Munoz was paid at a rate of pay of $27 per hour.  His hourly rate was increased to $30.00 per hour in January 2014, then to $33.00 per hour in January 2015, $40.00 per hour in January 2017 and $43.00 per hour in January 2018.

52.     Munoz reported directly to MICHAEL AMOROSO, his direct manager.  Munoz did not have the power to set the hours or hire/fire any staff.

53.     At all times relevant herein, Munoz was a non-exempt employee under the FLSA and NYLL and was entitled to receive overtime pay.

54.     Munoz routinely worked on average 72 hours per workweek on behalf of Defendants from the date of his hire until March 2018, and again from November 2018 until the date of the termination of his employment (the "Munoz Overtime Period").

55.     During the Munoz Overtime Period, Munoz was required to use an ACA vehicle to arrive at a Park and Ride at 5am to pick up and transport workers and supplies before their 7am shift. After 3pm every day, Mr. Munoz was required to use an ACA vehicle to transport workers and supplies for ACA, adding another two (2) hours to the end of every shift.

56.     Mr. Munoz was also required to maintain, gas up and service the ACA vehicle.

57.     Mr. Munoz owned his own vehicle, but was instructed by Defendants to use the ACA vehicle in order to complete tasks for ACA.

58.     Thus, during the Munoz Overtime Period, his regular schedule was from 5am to 5pm Monday through Saturday, i.e. 72 hours per week.

59.     Mr. Munoz received no pay whatsoever for the twelve (12) additional overtime hours he worked for Defendants during every week of the Munoz Overtime Period.

60.     Other records concerning the number of hours worked by Munoz as well as the compensation Munoz received during the FLSA Collective Action Period or the NYLL Claims Period, including payroll journals, GPS tracking information, and SMS text messages (including SMS text messages on the personal mobile devices of Individual Defendants DIANA AMOROSO and MICHAEL AMOROSO) are or should be in the possession and control of Defendants.

61.     Plaintiffs expect that those records will further confirm that Munoz received no compensation for certain hours worked over 40 during the FLSA Collective Action Period or the NYLL Claims Period.

62.     Upon information and belief, Collective Action Plaintiffs were/are paid in a similar manner as Munoz.

63.     Defendants willfully failed to pay Munoz and Collective Action Plaintiffs for certain hours worked, in violation of the FLSA, the NYLL and regulations promulgated thereunder.

64.     Munoz's work was performed in the normal course of Defendants' business and was integrated into the business of Defendants, and did not involve executive or administrative responsibilities.

65.     Munoz did not have the power to hire or fire employees or to set wages or schedules.

66.     Defendants had the power to hire and fire Munoz, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Munoz's services.

67.     At all relevant times herein, Munoz was an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA, the NYLL and their respective implementing regulations.

68.     Upon information and belief, Defendants were aware of the fact that Munoz and the Collective Action Plaintiffs were required to perform off-the-clock tasks throughout their tenure, including driving and servicing Company vehicles and transporting Company staff and supplies.

69.     Upon information and belief, throughout the period of Munoz's employment and continuing until today, Defendants have likewise underpaid other individuals like Munoz.

70.     Upon information and belief, the Collective Action Plaintiffs were treated by Defendants identically to Munoz.

71.     Upon information and belief, throughout all relevant time periods, the Collective Action Plaintiffs were required to maintain company vehicles, transport equipment and workers, yet Defendants failed to pay them any compensation for these hours worked, either at the straight rate of pay or for any additional overtime premium in violation of the FLSA and the NYLL.

72.     Throughout Munoz employment, and upon information and belief until the commencement of this action, Defendants failed to maintain accurate and sufficient time records.

73.     Defendants willfully and repeatedly has violated the record keeping requirements of the FLSA and the NYLL, in that Defendants failed to make, keep, and preserve adequate and accurate records of its employees and of the wages, hours, and other conditions of employment which they were required to maintain.   Specifically, Defendants failed to make, keep, and

preserve any records of wages paid with respect to Munoz and, on information and belief, Collective Action Plaintiffs, and, on information and belief, any records Defendants did keep failed to show adequately and accurately, among other things, the hours worked each workday, the total hours worked each workweek, the total earnings for each workweek, and/or the total overtime compensation for each workweek with respect to Munoz and FLSA Collective Action Plaintiffs.

74.     At all times pertinent to this Complaint, Defendants failed to comply with Title 29 U.S.C. §§ 201-209, as well as applicable provisions of the NYLL, in that Munoz and FLSA Collective Action Plaintiffs, performed services and labor for Defendants for which Defendants made no provision to pay Munoz and other similarly situated employees compensation to which they were lawfully entitled for all of the hours worked in excess of 40 within a work week.

75.     Upon information and belief, the Collective Action Plaintiffs have worked in excess of forty hours per week, yet Defendants have failed to pay them overtime compensation of one-and-one-half their regular hourly rate in violation of the FLSA and the NYLL.

76.     Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA and NYLL, as described in this Complaint.

### *Plaintiff Matthew Mustakas*

77.     Mustakas was hired by Defendants to work as a foreman for ACA.

78.     Mustakas's start date was May 2015 and he continued working for the Defendants until approximately April 2019.

79.     Defendants never provided Mustakas with any Employment Agreement or for that matter, any written record, documenting his salary and/or hourly rate of pay.

80.     Rather, Mustakas's salary and rate of pay were verbally communicated to him by the Defendants.

81.     Mustakas's duties consisted primarily of general labor, mechanical tasks, and attending to the day-to-day needs of a given project site.

82.     When hired, Mustakas was paid at a rate of pay of $29 per hour.  His hourly rate was increased to $36.00 per hour in May 2016, and $43.00 per hour in May 2018

83.     Mustakas reported directly to MICHAEL AMOROSO, his direct manager.  Mustakas did not have the power to set the hours or hire/fire any staff.

84.     At all times relevant herein, Mustakas was a non-exempt employee under the FLSA and NYLL and was entitled to receive overtime pay.

85.     Mustakas routinely worked on average 70 hours per workweek on behalf of Defendants from the date of his hire until the date of the termination of his employment (the "Mustakas Overtime Period").

86.     During the Mustakas Overtime Period, Mustakas was only paid from 7am until 3pm for 5 days per week.  Yet, every day, Mr. Mustakas was required to use an ACA vehicle to arrive at a Park and Ride (half an hour from his home) at 5am to pick up and transport workers and supplies before their 7am shift.   After 3pm every day, Mr. Mustakas was required to use an ACA vehicle to transport workers and supplies for ACA, adding another two (2) hours to the end of every shift.

87.     Mr. Mustakas was also required to gas up and service the ACA vehicle.

88.     Mr. Mustakas owned his own vehicle, but was instructed by Defendants to use the ACA vehicle in order to complete tasks for ACA.

89.     Thus, during the Mustakas Overtime Period, his regular schedule was from 5am to 5pm Monday through Friday, and most Saturdays.  Upon information and belief, this amounts to an average of approximately 70 hours per week.

90.     Mr. Mustakas received no pay whatsoever for the ten (10) additional overtime hours he worked for Defendants during every week of the Mustakas Overtime Period.

91.     Other records concerning the number of hours worked by Mustakas as well as the compensation Mustakas received during the FLSA Collective Action Period or the NYLL Claims Period, including payroll journals, GPS tracking information, and SMS text messages (including SMS text messages on the personal mobile devices of Individual Defendants DIANA AMOROSO and MICHAEL AMOROSO) are or should be in the possession and control of Defendants.

92.     Plaintiffs expect that those records will further confirm that Mustakas received no compensation for certain hours worked over 40 during the FLSA Collective Action Period or the NYLL Claims Period.

93.     Upon information and belief, Collective Action Plaintiffs were/are paid in a similar manner as Mustakas.

94.     Defendants willfully failed to pay Mustakas and Collective Action Plaintiffs for certain hours worked, in violation of the FLSA, the NYLL and regulations promulgated thereunder.

95.     Mustakas's work was performed in the normal course of Defendants' business and was integrated into the business of Defendants, and did not involve executive or administrative responsibilities.

96.     Mustakas did not have the power to hire or fire employees or to set wages or schedules.

97.     Defendants had the power to hire and fire Mustakas, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Mustakas's services.

98.     At all relevant times herein, Mustakas was an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA, the NYLL and their respective implementing regulations.

99.     Upon information and belief, Defendants were aware of the fact that Mustakas and the Collective Action Plaintiffs were required to perform off-the-clock tasks throughout their tenure, including driving and servicing Company vehicles and transporting Company staff and supplies.

100.    Upon information and belief, throughout the period of Mustakas's employment and continuing until today, Defendants have likewise underpaid other individuals like Mustakas.

101.    Upon information and belief, the Collective Action Plaintiffs were treated by Defendants identically to Mustakas.

102.    Upon information and belief, throughout all relevant time periods, the Collective Action Plaintiffs were required to maintain company vehicles, transport equipment and workers, yet Defendants failed to pay them any compensation for these hours worked, either at the straight rate of pay or for any additional overtime premium in violation of the FLSA and the NYLL.

103.    Throughout Mustakas employment, and upon information and belief until the commencement of this action, Defendants failed to maintain accurate and sufficient time records.

104.    Defendants willfully and repeatedly has violated the record keeping requirements of the FLSA and the NYLL, in that Defendants failed to make, keep, and preserve adequate and accurate records of its employees and of the wages, hours, and other conditions of employment which they were required to maintain.  Specifically, Defendants failed to make, keep, and

preserve any records of wages paid with respect to Mustakas and, on information and belief, Collective Action Plaintiffs, and, on information and belief, any records Defendants did keep failed to show adequately and accurately, among other things, the hours worked each workday, the total hours worked each workweek, the total earnings for each workweek, and/or the total overtime compensation for each workweek with respect to Mustakas and FLSA Collective Action Plaintiffs.

105.    At all times pertinent to this Complaint, Defendants failed to comply with Title 29 U.S.C. §§ 201-209, as well as applicable provisions of the NYLL, in that Mustakas and FLSA Collective Action Plaintiffs, performed services and labor for Defendants for which Defendants made no provision to pay Mustakas and other similarly situated employees compensation to which they were lawfully entitled for all of the hours worked in excess of 40 within a work week.

106.    Upon information and belief, the Collective Action Plaintiffs have worked in excess of forty hours per week, yet Defendants have failed to pay them overtime compensation of one-and-one-half their regular hourly rate in violation of the FLSA and the NYLL.

107.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA and NYLL, as described in this Complaint.

### *Plaintiff Dominick Ruvolo*

108.    Ruvolo was hired by Defendants to work as a foreman for ACA.

109.    Ruvolo's start date was January 2016 and he continued working for the Defendants until approximately April 2019.

110.    Defendants never provided Ruvolo with any Employment Agreement or for that matter, any written record, documenting his salary and/or hourly rate of pay.

111.    Rather, Ruvolo's salary and rate of pay were verbally communicated to him by the Defendants.

112.    Ruvolo's duties consisted primarily of general labor, mechanical tasks, and attending to the day-to-day needs of a given project site.

113.    When hired, Ruvolo was paid at a rate of pay of $26.00 per hour.  His hourly rate was increased to $35.00 per hour in April 2016.

114.    Ruvolo reported directly to MICHAEL AMOROSO, his direct manager.  Ruvolo did not have the power to set the hours or hire/fire any staff.

115.    At all times relevant herein, Ruvolo was a non-exempt employee under the FLSA and NYLL and was entitled to receive overtime pay.

116.    Ruvolo routinely worked on average 58 hours per workweek on behalf of Defendants from the date of his hire until the date of the termination of his employment (the "Ruvolo Overtime Period").

117.    During the Ruvolo Overtime Period, Ruvolo was only paid from 7am until 3pm for 6 days per week.  Yet, every day, Mr. Ruvolo was required to use an ACA vehicle to arrive at a Park and Ride at 5:00am to pick up and transport workers and supplies before their 7am shift. After 3pm every day, Mr. Ruvolo was required to use an ACA vehicle to transport workers and supplies for ACA, adding another two (2) hours to the end of every shift.

118.    Mr. Ruvolo was also required to gas up and service the ACA vehicle.

119.    Mr. Ruvolo owned his own vehicle, but was instructed by Defendants to use the ACA vehicle in order to complete tasks for ACA.

120.    Thus, during the Ruvolo Overtime Period, his regular schedule was from 5:00am to 5:00pm Monday through Saturday.  Upon information and belief, this amounts to an average of approximately 72 hours per week.

121.    Mr. Ruvolo received no pay whatsoever for the twelve (12) additional overtime hours he worked for Defendants during every week of the Ruvolo Overtime Period.

122.    Other records concerning the number of hours worked by Ruvolo as well as the compensation Ruvolo received during the FLSA Collective Action Period or the NYLL Claims Period, including payroll journals, GPS tracking information, and SMS text messages (including SMS text messages on the personal mobile devices of Individual Defendants DIANA AMOROSO and MICHAEL AMOROSO) are or should be in the possession and control of Defendants.

123.    Plaintiffs expect that those records will further confirm that Ruvolo received no compensation for certain hours worked over 40 during the FLSA Collective Action Period or the NYLL Claims Period.

124.    Upon information and belief, Collective Action Plaintiffs were/are paid in a similar manner as Ruvolo.

125.    Defendants willfully failed to pay Ruvolo and Collective Action Plaintiffs for hours worked, in violation of the FLSA, the NYLL and regulations promulgated thereunder.

126.    Ruvolo's work was performed in the normal course of Defendants' business and was integrated into the business of Defendants, and did not involve executive or administrative responsibilities.

127.    Ruvolo did not have the power to hire or fire employees or to set wages or schedules.

128.    Defendants had the power to hire and fire Ruvolo, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Ruvolo's services.

129.    At all relevant times herein, Ruvolo was an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA, the NYLL and their respective implementing regulations.

130.    Upon information and belief, Defendants were aware of the fact that Ruvolo and the Collective Action Plaintiffs were required to perform off-the-clock tasks throughout their tenure, including driving and servicing Company vehicles and transporting Company staff and supplies.

131.    Upon information and belief, throughout the period of Ruvolo's employment and continuing until today, Defendants have likewise underpaid other individuals like Ruvolo.

132.    Upon information and belief, the Collective Action Plaintiffs were treated by Defendants identically to Ruvolo.

133.    Upon information and belief, throughout all relevant time periods, the Collective Action Plaintiffs were required to maintain company vehicles, transport equipment and workers, yet Defendants failed to pay them any compensation for these hours worked, either at the straight rate of pay or for any additional overtime premium in violation of the FLSA and the NYLL.

134.    Throughout Ruvolo employment, and upon information and belief until the commencement of this action, Defendants failed to maintain accurate and sufficient time records.

135.    Defendants willfully and repeatedly has violated the record keeping requirements of the FLSA and the NYLL, in that Defendants failed to make, keep, and preserve adequate and accurate records of its employees and of the wages, hours, and other conditions of employment which they were required to maintain.   Specifically, Defendants failed to make, keep, and

preserve any records of wages paid with respect to Ruvolo and, on information and belief, Collective Action Plaintiffs, and, on information and belief, any records Defendants did keep failed to show adequately and accurately, among other things, the hours worked each workday, the total hours worked each workweek, the total earnings for each workweek, and/or the total overtime compensation for each workweek with respect to Ruvolo and FLSA Collective Action Plaintiffs.

136.    At all times pertinent to this Complaint, Defendants failed to comply with Title 29 U.S.C. §§ 201-209, as well as applicable provisions of the NYLL, in that Ruvolo and FLSA Collective Action Plaintiffs, performed services and labor for Defendants for which Defendants made no provision to pay Ruvolo and other similarly situated employees compensation to which they were lawfully entitled for all of the hours worked in excess of 40 within a work week.

137.    Upon information and belief, the Collective Action Plaintiffs have worked in excess of forty hours per week, yet Defendants have failed to pay them overtime compensation of one-and-one-half their regular hourly rate in violation of the FLSA and the NYLL.

138.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA and NYLL, as described in this Complaint.

### *Plaintiff Tiffany Oumano-Williams*

139.    Oumano-Williams was hired by Defendants to work as a foreman for ACA.

140.    Oumano-Williams's start date was January June 2015 and she continued working for the Defendants until approximately April 2019.

141.    Defendants never provided Oumano-Williams with any Employment Agreement or for that matter, any written record, documenting her salary and/or hourly rate of pay.

142.    Rather, Oumano-Williams's salary and rate of pay were verbally communicated to her by the Defendants.

143.    Oumano-Williams's duties consisted primarily of general labor, mechanical tasks, and attending to the day-to-day needs of a given project site.

144.    When hired, Oumano-Williams was paid at a rate of pay of $31 per hour.  Her hourly rate was increased to $36.00 per hour in February 2017.

145.    Oumano-Williams reported directly to MICHAEL AMOROSO, her direct manager. Oumano-Williams did not have the power to set the hours or hire/fire any staff.

146.    At all times relevant herein, Oumano-Williams was a non-exempt employee under the FLSA and NYLL and was entitled to receive overtime pay.

147.    Oumano-Williams routinely worked on average 72 hours per workweek on behalf of Defendants from February 2017 until the date of the termination of her employment (the "Oumano-Williams Overtime Period").

148.    During the Oumano-Williams Overtime Period, Oumano-Williams was only paid from 7am until 3pm for 5 days per week.  Yet, every day, Ms. Oumano-Williams was required to use an ACA vehicle to arrive at a Park and Ride at 5am to pick up and transport workers and supplies before their 7am shift.   After 3pm every day, Ms. Oumano-Williams was required to use an ACA vehicle to transport workers and supplies for ACA, adding another two (2) hours to the end of every shift.

149.    Ms. Oumano-Williams was also required to gas up and service the ACA vehicle.

150.    Ms. Oumano-Williams owned her own vehicle, but was instructed by Defendants to use the ACA vehicle in order to complete tasks for ACA.

151.    Thus, during the Oumano-Williams Overtime Period, her regular schedule was from 5am to 5pm Monday through Saturday, i.e. 72 hours per week.

152.    Ms. Oumano-Williams received no pay whatsoever for the twelve (12) additional overtime hours he worked for Defendants during every week of the Oumano-Williams Overtime Period.

153.    Other records concerning the number of hours worked by Oumano-Williams as well as the compensation Oumano-Williams received during the FLSA Collective Action Period or the NYLL Claims Period, including payroll journals, GPS tracking information, and SMS text messages (including SMS text messages on the personal mobile devices of Individual Defendants DIANA AMOROSO and MICHAEL AMOROSO) are or should be in the possession and control of Defendants.

154.    Plaintiffs expect that those records will further confirm that Oumano-Williams received no compensation for hours worked over 40 during the FLSA Collective Action Period or the NYLL Claims Period.

155.    Upon information and belief, Collective Action Plaintiffs were/are paid in a similar manner as Oumano-Williams.

156.    Defendants willfully failed to pay Oumano-Williams and Collective Action Plaintiffs for hours worked, in violation of the FLSA, the NYLL and regulations promulgated thereunder.

157.    Oumano-Williams's work was performed in the normal course of Defendants' business and was integrated into the business of Defendants, and did not involve executive or administrative responsibilities.

158.    Oumano-Williams did not have the power to hire or fire employees or to set wages or schedules.

159.    Defendants had the power to hire and fire Oumano-Williams, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Oumano-Williams's services.

160.    At all relevant times herein, Oumano-Williams was an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA, the NYLL and their respective implementing regulations.

161.    Upon information and belief, Defendants were aware of the fact that Oumano-Williams and the Collective Action Plaintiffs were required to perform off-the-clock tasks throughout their tenure, including driving and servicing Company vehicles and transporting Company staff and supplies.

162.    Upon information and belief, throughout the period of Oumano-Williams's employment and continuing until today, Defendants have likewise underpaid other individuals like Oumano-Williams.

163.    Upon information and belief, the Collective Action Plaintiffs were treated by Defendants identically to Oumano-Williams.

164.    Upon information and belief, throughout all relevant time periods, the Collective Action Plaintiffs were required to maintain company vehicles, transport equipment and workers, yet Defendants failed to pay them any compensation for these hours worked, either at the straight rate of pay or for any additional overtime premium in violation of the FLSA and the NYLL.

165.    Throughout Oumano-Williams employment, and upon information and belief until the commencement of this action, Defendants failed to maintain accurate and sufficient time records.

166.    Defendants willfully and repeatedly has violated the record keeping requirements of the FLSA and the NYLL, in that Defendants failed to make, keep, and preserve adequate and

accurate records of its employees and of the wages, hours, and other conditions of employment which they were required to maintain.   Specifically, Defendants failed to make, keep, and preserve any records of wages paid with respect to Oumano-Williams and, on information and belief, Collective Action Plaintiffs, and, on information and belief, any records Defendants did keep failed to show adequately and accurately, among other things, the hours worked each workday, the total hours worked each workweek, the total earnings for each workweek, and/or the total overtime compensation for each workweek with respect to Oumano-Williams and FLSA Collective Action Plaintiffs.

167.    At all times pertinent to this Complaint, Defendants failed to comply with Title 29 U.S.C. §§ 201-209, as well as applicable provisions of the NYLL, in that Oumano-Williams and FLSA Collective Action Plaintiffs, performed services and labor for Defendants for which Defendants made no provision to pay Oumano-Williams and other similarly situated employees compensation to which they were lawfully entitled for all of the hours worked in excess of 40 within a work week.

168.    Upon information and belief, the Collective Action Plaintiffs have worked in excess of forty hours per week, yet Defendants have failed to pay them overtime compensation of one-and-one-half their regular hourly rate in violation of the FLSA and the NYLL.

169.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA and NYLL, as described in this Complaint.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

170.    Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all persons similarly situated who are or were formerly employed by Defendants since July 1, 2016 (three years before the filing of the Complaint in this case) to the entry of judgment in this case

(the "FLSA Collective Action Period") who were non-exempt employees within the meaning of the FLSA and who were not paid wages for all hours worked and overtime compensation at rates not less than one and one half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "FLSA Collective Action Plaintiffs"), specifically, all foremen employed by Defendants in the State of New York who were (A) required as a principal activity of their employment to drive Defendants' vehicles (i) for the purpose of transporting Defendants' laborers and supplies to and from Defendants' worksites, and (ii) for the purpose of servicing Defendants' vehicles, and who were (B) required to work more than forty hours per week for which they were not paid overtime compensation as required by the FLSA.

171.    At all relevant times, Plaintiffs and the other FLSA Collective Action Plaintiffs are and have been similarly situated, are and have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper overtime premium at the rate of one and one half times the regular rate for certain work in excess of forty (40) hours per workweek.  The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Action Plaintiffs. Specifically, Plaintiffs and FLSA Collective Action Plaintiffs claim that Defendants willfully violated Plaintiffs' and FLSA Collective Action Plaintiffs' rights.

172.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  The FLSA Collective Action Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants.  Notice can be

provided to the FLSA Collective Action Plaintiffs via first class mail to the last address known to Defendants.

173.    The collective action is so numerous that joinder of all Plaintiffs is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently under the sole control of the Defendants, upon information and belief, there are more than ten Plaintiffs of the collective action who worked for Defendants during the FLSA Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

174.    Plaintiffs will fairly and adequately protect the interests of the FLSA Collective Action Plaintiffs and has retained counsel that is experienced and competent in the fields of employment law and collective action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those Plaintiffs of this collective action.

175.    The FLSA Collective Action Plaintiffs are similarly situated to Plaintiffs in that they are or were denied premium overtime pay for certain hours worked beyond forty hours in a week – in particular the hours that they were required to transport workers and supplies and service company vehicles.

176.    They are further similarly situated in that Defendants have or had a policy and practice of knowingly and willfully refusing to pay overtime for such work.

177.    They are further similarly situated in that, upon information and belief, Defendants have a policy and practice of failing to provide Plaintiffs with statutorily required notice of wages or statements of their pay received in part so as to hide Defendants' violations of the wage and hour laws and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

178.    They are further similarly situated in that, upon information and belief, Defendants have a policy and practice of willfully disregarding and purposefully evading recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

179.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs and FLSA Collective Action Plaintiffs worked and to avoid paying Plaintiffs properly for their full hours worked and for overtime due them.

180.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all Plaintiffs is impracticable.  Furthermore, inasmuch as the damages suffered by individual FLSA Collective Action Plaintiffs might be relatively small, the expense and burden of individual litigation make it virtually impossible for the Plaintiffs of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

181.    Questions of law and fact common to Plaintiffs of the collective action predominate over questions that may affect only individual Plaintiffs because Defendants have acted on grounds generally applicable to all Plaintiffs.  Among the common questions of law and fact common to Plaintiffs and the FLSA Collective Action Plaintiffs are:

      a.    whether Defendants employed Plaintiffs and the FLSA Collective Action Plaintiffs within the meaning of the FLSA;

      b.    whether Defendants failed to provide Plaintiffs and the FLSA Collective Action Plaintiffs with a notice of wages explaining each employees' compensation.

c.      whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the FLSA Collective Action Plaintiffs;

d.      what proof of hours worked is sufficient where the employer fails in its duty to maintain records;

e.      whether Defendants failed to pay Plaintiffs and the FLSA Collective Action Plaintiffs wages for all hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f.      whether Defendants' violations of the FLSA are willful as that term is used in the context of the FLSA;

g.      whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interests, costs and disbursements and attorneys' fees; and

h.      whether Defendants should be enjoined from such violations of the FLSA in the future.

182.   Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

183.   With respect to Defendants' violations of the NYLL, Plaintiffs bring this lawsuit against Defendants on their own behalf for their damages resulting from Defendants' violation of the NYLL on or after July 1, 2013 (six years before the filing of this Complaint) (the "NYLL Claims Period").

*** 

184.   Throughout Plaintiffs' employment, and upon information and belief until the commencement of this action, Defendants failed to maintain accurate and sufficient time records.

185.    Defendants willfully and repeatedly has violated the record-keeping requirements of the FLSA and the NYLL, in that Defendants failed to make, keep, and preserve adequate and accurate records of its employees and of the wages, hours, and other conditions of employment which they were required to maintain.   Specifically, Defendants failed to make, keep, and preserve any records of wages paid with respect to Plaintiffs' and, on information and belief, Collective Action Plaintiffs, accurately reflecting, *inter alia*, hours worked, and/or the total overtime compensation for each workweek with respect to Plaintiffs and FLSA Collective Action Plaintiffs.

186.    At all times pertinent to this Complaint, Defendants failed to comply with Title 29 U.S.C. §§ 201-209, as well as applicable provisions of the NYLL, in that Plaintiffs and FLSA Collective Action Plaintiffs, performed services and labor for Defendants for which Defendants made no provision to pay Plaintiffs and other similarly situated employees compensation to which they were lawfully entitled.

187.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA and NYLL, as described in this Complaint.

### COUNT I
### By Plaintiffs and Collective Action Plaintiffs under the FLSA
### (failure to pay overtime)

188.    Plaintiffs, on behalf of themselves and all Collective Action Plaintiffs, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

189.    At all relevant times, Defendants employed Plaintiffs and each of the Collective Action Plaintiffs within the meaning of the FLSA.

190.    At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to their employees for certain hours worked in excess of forty hours per workweek.

191.    Specifically, Defendants willfully failed and refused to pay Plaintiffs and Collective Action Plaintiffs any wages for time spent working for Defendants other than on a work-site, including, but not limited to, using company issued vehicles to transport employees and supplies per Defendants' instruction.

192.    This uncompensated time typically amounted to approximately four (4) hours per day for each Plaintiff and all Collective Action Plaintiff.

193.    As a result of Defendants' willful failure to compensate their employees, including Plaintiffs and the FLSA Collective Action Plaintiffs, at a rate not less than one and one half times their regular rate of pay for certain work performed in excess of forty hours per workweek, Defendants have violated, and continues to violate, the FLSA, 29 U.S.C. §201 et. seq..

194.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

195.    Due to Defendants' FLSA violations, Plaintiffs and the Collective Action Plaintiffs are entitled to recover from Defendants their unpaid overtime compensation, and an additional equal amount as liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

**COUNT II**
**By Plaintiffs under the New York Labor Law**
**(failure to pay overtime)**

196.    Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

197.     At all relevant times, Plaintiffs were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

198.     Defendants willfully violated Plaintiffs' rights by failing to pay overtime compensation at rates not less than one and one half times the regular rate of pay for each hour worked in excess of forty hours per workweek in violation of the New York Labor Law §§650 et. seq. and its supporting regulations in 12 N.Y.C.R.R. §137.

199.     Defendants' failure to pay overtime was willful within the meaning of New York Labor Law § 663 and supporting regulations.

200.     Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §663(1).

**COUNT III**
**By Plaintiffs under the New York Labor Law**
**(failure to provide accurate wage notices and wage statements)**

201.     Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

202.     At all relevant times, Plaintiffs were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

203.     Defendants have willfully failed to supply Plaintiffs with the notices required pursuant to New York Labor Law § 195 (1).

204.     Defendants have willfully failed to supply Plaintiffs with accurate statements of pay with every payment of wages, violating New York Labor Law § 195 (3).

205.    Due to Defendants' violations of New York Labor Law § 195 (1), Plaintiffs are entitled to recover from Defendants fifty dollars ($50.00) for each work day that the violations occurred, up to a total of five thousand dollars ($5000.00) per employee, as provided for by New York Labor Law § 198(1)-b, plus reasonable attorneys' fees, costs, injunctive and declaratory relief.

206.    Due to Defendants' violations of New York Labor Law 195 (3), Plaintiffs are entitled to recover from Defendants two hundred fifty dollars ($250.00) for each work day that the violations occurred, up to a total of five thousand dollars ($5000.00) per employee, as provided for by New York Labor Law §198(1)-d, reasonable attorneys' fees, costs, injunctive and declaratory relief.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

(a)     Enter a declaratory judgment that the acts and practices of Defendants complained of herein are in violation of the laws of the United States and the State of New York;

(b)     Enjoin and permanently restrain the Defendants' violations of the laws of the United States and the State of New York;

(c)     Designation of this action as a collective action on behalf of the Collective Action Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated Plaintiffs of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Plaintiffs;

(d)     A compensatory award of unpaid compensation at the statutory overtime rate, due under the FLSA and New York Labor Law;

(e)     An award of liquidated damages as a result of Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216 and New York Labor Law;

(f)     An award of $5000 to each Plaintiff due to Defendants' violations of New York Labor Law § 195 (1), as provided for by New York Labor Law § 198(1)-b; and an award of $5000 to each Plaintiff due to Defendants' violations of New York Labor Law § 195 (3), as provided for by New York Labor Law §198(1)-d,

(g)     Judgment for interest (including pre-judgment interest);

(h)     Judgment awarding Plaintiffs the costs of this action, together with reasonable attorneys' fees pursuant to the FLSA and New York Labor Law; and

(i)     Such other and further relief as to this Court appears necessary and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
        April 13, 2020

Respectfully Submitted,

GRANOVSKY & SUNDARESH PLLC

By:     */s/Alex Granovsky*
        Alexander Granovsky (AG-6962)
        Benjamin Rudolph Delson (BD-1724)
        48 Wall Street, 11th Floor
        New York, NY 10005
        Tel: (646) 524-6001
        ag@g-s-law.com
        delson@g-s-law.com
        *Counsel for Plaintiffs*